UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| : | |
| v. : | Case No.: 21-cr-00430 |
| : | |
| MICHAEL GARETH ADAMS, : | |
| : | |
| Defendant. : | |

**UNITED STATES' MOTION REQUESTING**
**ORDER OF PRETRIAL DETENTION OF DEFENDANT**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully requests that this Court issue an Order detaining defendant Michael Gareth Adams pending trial. The defendant was arrested on the criminal complaint from this case, and an initial appearance was held on April 29, 2021 before Magistrate Judge G. Michael Harvey. ECF No. 6. The court set a preliminary hearing for June 29, 2021 before Magistrate Judge Zia M. Faruqui. *Id*. On June 28, 2021, Magistrate Harvey reviewed Pretrial Services Agency Status Report 11 — which notes that Adams had an open warrant in Fairfax County, Virginia issued on May 9 — and ordered that Adams self-surrender by June 30. Adams failed to self-surrender in Fairfax County and later did not appear to arraignment before Judge Timothy J. Kelly on July 8, 2021. After receiving a personal recognizance bond, Adams failed to appear for arraignment/status conference on July 16, 2021. At that hearing, Judge Kelly issued a bench warrant. On June 7, 2022, Adams's case was reassigned to the Calendar Committee since he had been a fugitive since July 16, 2021.

Adams remained a fugitive until he self-surrendered on January 5, 2023 — nearly a year and a half since Judge Kelly issued the bench warrant.

This Court should schedule a detention hearing and ultimately enter an Order of Detention Pending Trial on the grounds of Adams's flagrant risk of flight. If this Court does not order Adams's detention, it should at a minimum impose GPS monitoring pending trial to encourage compliance with his conditions of release.

## I.   PROCEDURAL BACKGROUND

On June 24, 2021, the U.S. Attorney's Office filed an Information charging Adams with the following four offenses. ECF No. 12.

1. 18 U.S.C. § 1752(a)(1) — Entering and Remaining in a Restricted Building or Grounds

2. 18 U.S.C. § 1752(a)(2) — Disorderly and Disruptive Conduct in a Restricted Building or Grounds

3. 40 U.S.C. § 5104(e)(2)(D) — Disorderly Conduct in a Capitol Building

4. 40 U.S.C. § 5104(e)(2)(G) — Parading, Demonstrating, or Picketing in a Capitol Building

These charges stem from Adams's involvement in the attack on and riot at the United States Capitol in Washington, D.C., on January 6, 2021.

## II.     FACTUAL BACKGROUND

### A. The 2020 United States Presidential Election and the Official Proceeding on January 6, 2021

The 2020 United States Presidential Election occurred on Tuesday, November 3, 2020. The United States Electoral College is a group required by the Constitution to form every four years for the sole purpose of electing the president and vice president, with each state appointing its own electors in a number equal to the size of that state's Congressional delegation.

On December 14, 2020, the presidential electors of the Electoral College met in the state capital of each state and in the District of Columbia and formalized the result of the 2020 U.S. Presidential Election: Joseph R. Biden Jr. and Kamala D. Harris won sufficient votes to be elected the next president and vice president of the United States.

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened in the United States Capitol building. The purpose of the Joint Session was to open, count, and resolve any objections to the Electoral College vote of the 2020 Presidential Election, and to certify the results of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

### B. The Attack at the Capitol on January 6, 2021

The Capitol is secured 24 hours a day by United States Capitol Police. The Capitol Police maintain permanent and temporary barriers to restrict access to the Capitol exterior, and only authorized individuals with appropriate identification are allowed inside the Capitol building.

On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

That day, at approximately 1:00 PM, the Joint Session convened in the Capitol building for the Certification of the Electoral College vote. Vice President Michael R. Pence presided, first in the Joint Session and then in the Senate chamber.

A large crowd began to gather outside the Capitol perimeter as the Joint Session got underway. Crowd members eventually forced their way through, up, and over Capitol Police barricades onto the Capitol grounds and advanced to the building's exterior façade. Capitol Police officers attempted to maintain order and stop the crowd from entering the Capitol building, to which the doors and windows were locked or otherwise secured. Nonetheless, shortly after 2:00 PM, crowd members forced entry into the Capitol building by breaking windows, ramming open doors, and assaulting Capitol Police officers. Other crowd members encouraged and otherwise assisted the forced entry. The crowd was not lawfully authorized to enter or remain inside the Capitol building or grounds, and no crowd member submitted to security screenings or weapons checks by Capitol Police or other security officials.

Shortly thereafter, at approximately 2:20 p.m., members of the House and Senate (including Vice President Pence) were evacuated from their respective chambers. The Joint Session was halted while Capitol Police and other law-enforcement officers worked to restore order and clear the Capitol building and grounds of the unlawful occupants.

Later that night, law enforcement regained control of the Capitol building and grounds. At approximately 8:00 PM, the Joint Session reconvened, presided over by Vice President Pence.

**C. Adams's Criminal History**

On April 30, 2018 in Fairfax County, Adams was arrested for felony marijuana sell/give/distribute 1/2 oz - 5 lbs. He was convicted on March 15, 2019 and sentenced to five years jail imposed and suspended. He is still on probation for this conviction.

On May 6, 2018, Adams was arrested in Fairfax County for driving while intoxicated. There is no disposition for this case on NCIC.

On January 5, 2021, Adams failed to appear to court in Fairfax County on a misdemeanor charge.

On April 22, 2021, Adams was arrested and later charged with misdemeanors for his actions on January 6, 2021 at the U.S. Capitol. Adams failed to appear for his arraignment/status hearing on July 16, 2021, and Judge Kelly issued a bench warrant.

On May 9, 2021, Fairfax County issued a warrant for Adams's arrest relating to a felony hit-and-run. Adams was a fugitive in that case for almost 20 months.

### D.  Adams's Actions on January 6, 2021

Adams trespassed on Capitol grounds while carrying a skateboard and a flag. At approximately 2:45 PM, Adams entered the Capitol building on the northwest side through the parliamentarian door. Since this door was breached at approximately 2:42 PM, Adams was among the first wave of rioters to enter. Adams still carried his skateboard and appeared to use his phone to take pictures or video. He proceeded into the parliamentarian's office at 2:46 PM and exited the office at 2:49 PM.

Adams likely spent around fifteen minutes in the Capitol building, but after exiting he remained within the restricted area near the building until approximately 4:59 PM.

### III.   LEGAL AUTHORITY

Statute requires that once a defendant appears before a judicial officer,

> the judicial officer shall issue an order that, pending trial, the person be—
>
> 1) Released on personal recognizance or upon execution of an unsecured appearance bond, under subsection (b) of this section;
>
> 2) released on a condition or combination of conditions under subsection (c) of this section;
>
> 3) temporarily detained to permit revocation of conditional release, deportation, or exclusion under subsection (d) of this section; or
>
> 4) detained under subsection (e) of this section.

18 U.S.C. § 3142(a).

> If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial.

18 U.S.C. § 3142(e)(1)

> The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community—
>
> (1) upon motion of the attorney for the Government, in a case that involves—
>
> (A) a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; [or]
>
> . . .
>
> (2) upon motion of the attorney for the Government or upon the judicial officer's own motion in a case, that involves—
>
> (A) a serious risk that such person will flee

The factors to be considered by the judge include the nature and circumstances of the offense charged, including whether the offense is a crime of violence, the weight of the evidence; the history and characteristics of the defendant; and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

## IV. ARGUMENT

In the Capitol Siege context, Adams's extended period as a fugitive is unique and establishes him to be a serious flight risk. Indeed, he has already eluded the United States Marshals once in this case and was also a fugitive in his felony hit-and-run case in Fairfax County — the

crime itself evinces flight risk. Adams appeared at the Capitol on January 6, 2021 after failing to appear to court in Fairfax County on January 5, 2021. Adams made these decisions to shirk responsibility while on probation for his 2018 felony conviction in Virginia.

The weight of the evidence against Adams is strong. The government has numerous videos and photographs showing that Adams was in the first wave of rioters to enter the Capitol building through the parliamentarian door. His early presence at this critical spot all but guarantees that he saw many signs and heard many orders informing him that he had entered the grounds and building illegally. In fact, Adams likely saw a rioter pry the parliamentarian door open.

While the fact that Adams turned himself is mitigating, this lone act cannot overcome his proven inability to follow court direction or abide by the law.

## V. CONCLUSION

For all these reasons, the government believes that there is clear and convincing evidence that no condition or combination of conditions may be crafted by this Court that would reasonably ensure the appearance of Adams or the safety of the community as Adams awaits trial. If this Court disagrees, it should at minimum impose GPS monitoring pending trial to encourage Adams's compliance with his conditions of release. The government respectfully requests that this Court issue an Order of Detention Pending Trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   /s/ *Tighe Beach*
       TIGHE BEACH
       Assistant United States Attorney

601 D Street NW
Washington, D.C. 20001
(240) 278-4348
Tighe.beach@usdoj.gov
CO Bar No. 55328