UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA : 

      v.                                :     Cr. No. 21-430 (TJK)

MICHAEL ADAMS            :

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Mr. Adams comes before this Court for sentencing having pleaded guilty to one count of parading, demonstrating or picketing in United States Capital on January 6, 2021. He was originally arrested on April 22, 2021 in the Eastern District of Virginia. He was released on conditions including a requirement that he clear up any outstanding warrants. Regrettably, he failed to do so and failed to appear in Court as directed on July 16, 2021. A warrant was issued and remained outstanding until he turned himself in on January 5, 2023. Upon his arrest, he was detained until he appeared before this Court on January 13, 2023, at which time he was released into the third party custody of his father and was directed to self surrender to Fairfax County Detention Center on the outstanding warrant there. He did so and was released. (See ECF Dckt. 26 reporting status). On January 17, 2023, he appeared before Magistrate Judge Faruqui as directed, and was placed on HSP with home detention and location monitoring pending the outcome of this case. (See ECF Dckt 28). He has been fully compliant with his release conditions since that time. He has been drug testing and has given all negative results. He is employed, is compliant with home detention, and has reported as directed. His prior outstanding warrants have been resolved and he has no new charges or pending matters. **Thus, he has now served 9 days in custody and more than 8 months of home detention, modified to a curfew with location**

**monitoring on 5/31.** In light of the time he has already served and his compliance over the last nearly 9 months, we respectfully request that the Court impose a sentence of time-served, or in the alternative, a sentence of probation.

Mr. Adams pleaded guilty to the class B misdemeanor on May 31, 2023. He fully acknowledged his crime and has expressed his remorse for his actions that day. He traveled to the District of Columbia to attend the Stop the Steal Rally. He did not come intending to engage in violence, did not come prepared for violence, and did not participate in any violent acts. He came alone, but joined the crowd and acknowledges shouting along with the mob. Even in the face of others acting violently, he did not join in their activity, although he did enter the Parlimentarian's office briefly. He was in the Capitol for a total of about 19 minutes. He fully acknowledges that he was wrong to go into the Capitol and he regrets doing so. As the letters submitted on his behalf demonstrate, he has changed for the better since turning himself in on this case in January. (See Exh. 1-4). He is now employed, attending church, is drug free, and is fully compliant with his conditions of release, demonstrating that he can be trusted in the community. He currently resides with his father and sister in Virginia and intends to continue to do so after his sentencing.

Congress requires federal courts to impose the least restrictive sentence necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. §3553(a). Those factors include (a) the nature and circumstances of the offense and history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range; (d) the need to avoid unwanted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from

future crimes and providing the defendant with needed educational and vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a).  In this case, a term of probation would meet all of the pertinent purposes of sentencing and would be appropriate given Mr. Adams' history and characteristics, the time he has already served in custody and on home detention, as well as his minimal role in the offense.

Notably, Mr. Adams did not engage in any violence or destruction of property.  The government suggests that that lack of violence and destruction of property is not a mitigating factor in misdemeanor cases because, had this conduct been present, he would have been charged with felony offenses. However, this distinction is important because there have been misdemeanor cases where defendants did display assaultive and/or aggressive behavior. Without addressing all of the cases where sentences have been imposed, Counsel would point the Court to a few examples:  *United States v.Bradley Rukstales*, 21-CR-041 (CJN) (defendant sentenced to 30 days' incarceration after government alleged he threw a chair in the direction of police officers who had been forced to retreat and was ultimately dragged out of building after resisting their efforts); *United States v. Jacob Wiedrich*, 21-CR-581 (TFH) (two months' home detention imposed as defendant was young, did well on pre-trial supervision, and had no criminal history but shouted at police while entering building); *United States v. Jordan Hernandez*, 21-CR-272 (TJK) (court imposed two months' home detention despite Hernandez shouting at police and scaling wall to gain access to Capitol). Mr. Adams did not engage in this type of behavior and thus probation would be appropriate.

The purposes of sentencing include punishment, rehabilitation, general deterrence, specific deterrence, and incapacitation.  In this case, there is no need for incapacitation, specific deterrence or rehabilitation.  Mr. Adams likelihood of recidivism is very low.  He has accepted

responsibility for his actions and has engaged in no similar behavior. While he initially fled, he has since been fully compliant with his release conditions, suggesting he will have no difficulty on supervision. Thus, the purposes of sentencing that seem most at play are general deterrence and punishment.

General deterrence has also been served in these cases by the collateral consequences that have damaged the lives and reputations of misdemeanants with the same charge in full view of the world. The rise of social media has made available the intimate details of every January 6 defendants' case with the touch of a button. The world is watching and has observed even the least culpable defendants be arrested, charged, and sentenced in public. There is no doubt that general deterrence has been served for those who would be deterred.  Moreover, the public will be adequately deterred by the sentences meted out against those who perpetrated the violence and mayhem at the Capitol and the negative publicity and collateral consequences attendant to even a misdemeanor conviction for the others involved.  Those who would not be deterred by these consequences are likely not capable of being deterred.  A period of probation does constitute punishment as one's liberty interests are curtailed by travel restrictions, reporting obligations, and limitations on one's personal freedoms.  Mr. Adams has already been on restrictive conditions for 9 months.

Mr. Adams did not destroy property, steal property, commit violent acts, or encourage others to do so.  He did not engage in pre-planning or coordination activities.  He brought no weapons or even defensive gear with him. While it is not appropriate to punish an individual for asserting their right to go to trial and to have the government held to its burden of proof, there is a societal benefit when people who have done wrong acknowledge that wrongdoing in a public way as Mr. Adams has done.  This has a deterrent effect on future wrongdoing and has a positive

effect on others taking responsibility for their actions. It is also important to note that after his arrest in this case, Mr. Adams has taken no actions to suggest he would ever engage in this type of conduct again. He has not participated in rallies, has not continued to post about or espouse theories about the election being stolen, and has not engaged in criminal behavior.

On the issue of sentencing disparity, counsel appreciates that the government has attempted to set out meaningful distinctions in cases and some coherent rationale for the recommendations it makes. However, those distinctions are not as clear as the government has suggested, and there is no scientific formula that will lead to sentencing uniformity. In a District with as many judges as this District has, there can be no definitive sentence that addresses the unique facts and circumstances of each case. Sentences imposed in these cases vary from very short terms of probation to periods of incarceration, and everything in between. While Mr. Adams' conduct was serious, probation remains an appropriate resolution as it is well within the guidelines and would not result in disparity. *See e.g., U.S. v. Jonathan Sanders*, 1-21-CR-384 (CJN) (36 months' probation); *United States v. Jackson Kostolsky*, 21-cr-197 (DLF) (36 months' probation with home confinement); *U.S. v. Jennifer Parks*, 1:21-CR-363 (CJN) (24 months' probation); *United States v. Julia Sizer*, 1-21-CR-621 (CRC) (12 months' probation); *United States v. Gary Edwards*, 1:21-CR-366 (JEB) (12 months' probation); *U.S. v. Jordan Hernandez*, 21-CR-272 (TJK), (24 months' probation); *United States v. Anna Morgan Lloyd*, 21-cr-164 (RCL) (probation imposed as requested by government); *United States v. Jessica and Joshua Bustle*, 21-Cr-238 (TFH) (probation with home confinement imposed with lesser terms of home confinement than requested by government); *United States v. Andrew Bennett*, Crim. No. 21-227 (JEB) (probation with home confinement imposed); *United States v. Danielle Doyle,* Crim. No. 21-00234 (TNM) (2 months probation with fine imposed); *United States v. Valerie Ehrke*, 21-cr-

97 (PLF) (probation imposed as requested by government); *United States v. Eliel Rosa*, Crim. No. 21-068 (TNM) (12 months probation); *United States v. Jacob Hiles*, Crim. No. 21-155 (ABJ)(2 years probation); *United States v. Sean Cordon*, Crim. No. 21-269 (TNM) (2 months probation); *United States v. John Wilkerson, IV*, Crim. No. 21-302 (CRC)(3 years probation); *United States v. Andrew Wigley*, Crim. No. 21-042 (ABJ)(18 months probation); *United States v. Andrew Hatley*, Crim. No. 21-098 (TFH) (3 years probation); *United States v. Rachael Pert*, Crim. No. 21-139 (TNM)(2 years probation); *United States v. Jeffrey Witcher*, Crim. No. 21-235 (RC)(12 months probation); *United States v. Brandon Nelson and Abram Markofski*, Crim. No. 21-344 (JDB) (2 years probation); *United States v. Thomas Vinson and Lori Vinson*, 21-CR-55 (RBW) (Probation with community service and fine); *United States v. Eliel Rosa*, 21-68 (TNM) (12 months probation with community service); *United States v. Thomas Gallagher*, 21-Cr-41 (24 months probation).

Indeed, Counsel has reviewed a recent chart[1] the government compiled showing sentences to date in the January 6 cases, and as of August 25, 2023, there have been 341 cases where defendants have been sentenced on the petty misdemeanor offenses under 40 USC 5104 as Mr. Adams will be. Of those 341 cases, 197 cases (nearly 60%) received no term of incarceration. Of the 197 individuals who received no term of incarceration, 110 received straight probation or a fine, while 87 received a period of home detention. For the individuals who received no incarceration, the number of days of home detention ranged from zero days to 120 days, with the mode and median being zero days and the mean being 25 days of home detention. A sentence of incarceration is not warranted -- looking at all 341 cases sentenced under 40 USC 5104, the mode of days in custody is zero, the median is zero, and the mean is 15

---

[1] https://www.justice.gov/file/1594006/download - last updated August 25, 2023. Attached as Exh. 5.

days. This figure is of course skewed by sentences where individuals acted far worse than Mr. Adams or where they had been held pretrial and were ultimately sentenced to the maximum and released.

Indeed, many individuals who arguably committed more serious misconduct received lesser sentences than what the government suggests is appropriate in this case. While there are many, a few of note include:

- Robert Lyon who, according to the government breached the Senate Parlimentarian's office and aided in the trashing of that office, stole items therein, lied about his presence at the capitol, and remained in the Capitol and on the grounds for hours, *U.S. v. Robert Lyon, 21-161 (RBW)* (pleaded guilty to theft of government property and disorderly and disruptive conduct in the capitol, sentenced to 40 days);
- Emily Hernandez who, according to the government entered the crypt and the Speaker's suite and stole items, remained in the Capitol for nearly an hour, and remained on Capitol grounds displaying trophies even longer, *U.S. v. Emily Hernandez*, 21-747 (JEB) (pleaded guilty to entering and remaining in the capitol, a class A misdemeanor, sentenced to 30 days);
- Derek Jancart who, according to the government came prepared for violence with a gas mask, returned to the Capitol after seeing the violence on TV, penetrated the Capitol to the Speakers Office and beyond, scaled the wall of the Capitol with a bike rack, remained in the building for 40 minutes and expressed no remorse, *U.S. v. Derek Jancart, 21-148 (JEB)* (pleaded guilty to disorderly conduct in the capitol, sentenced to 45 days);
- Jordan Stotts, who, according to the government scaled the wall of the Capitol, stood face to face yelling at the police, showed no remorse, and posted on Facebook saying he would be back, *U.S. v. Stotts, 21-272 (TJK)* (pleaded guilty to parading and picketing, sentenced to probation with home detention);
- Bradley Rukstales, who, according to the government threw a chair at officers, resisted arrest and had to be subdued and taken to the ground by multiple officers to be arrested, *U.S. v. Rukstales, 21-CR-41 (CJN)* (pleaded guilty to parading and picketing, sentenced to 20 days);
- Felipe Marquez, who, according to the government brought a firearm into the district but left it in his car, entered the private office of a Senator which was ransacked, interfered with the police while in the Capitol*, U.S. v. Marquez*, 21-cr-136 (RC) (pleaded guilty to parading and picketing, sentenced to probation with home detention);
- Anthony Mariotto, who, according to the government entered the Senate Gallery, videotaped assaults on officers, attempted to open closed doors, *United States v. Mariotto*, 21-94 (RBW) (pleaded guilty to parading and picketing, sentenced to probation);

- Gracyn Courtright, who, according to the government entered the Senate floor, attempted to steal a members only sign, *U.S. v. Courtright*, 21-CR-72(CRC) (pleaded guilty to class A misdemeanor, 30 days);
- Justin Smith, 22-CR-157 (RDM) who, according to the government was completely non compliant with his release conditions, sentenced to probation.

## CONCLUSION

In the end, this Court is faced with the task of meting out a just and appropriate sentence given all of the factors involved, and Mr. Adams places his trust in this Court to do just that.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
MICHELLE PETERSON
Chief Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004

.